UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAVENSWOOD CENTER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 10 C 1064 |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL DEPOSIT INSURANCE | ) | |
| CORPORATION, in its capacity as receiver for | ) | |
| Bank of Lincolnwood, Lincolnwood, Illinois, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Ravenswood Center, LLC ("Ravenswood") seeks $1,407,556 in actual direct compensatory damages allegedly caused by the repudiation of its construction loan by Defendant the Federal Deposit Insurance Corporation (the "FDIC"). Presently before us is the FDIC's motion to dismiss, which asserts that the damages that Ravenswood alleges are not compensable under the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821. For the following reasons, we grant the motion, along with leave for Ravenswood to file an amended complaint within thirty days, if it is able to do so consistent with the directive in this Opinion.

## BACKGROUND

On September 8, 2008, Ravenswood entered into a loan agreement (the "Construction Loan") for $2,950,000 with Bank of Lincolnwood to refinance its purchase money loan and to finance the conversion of its industrial lofts to office suites for purposes of leasing them to commercial tenants. (Compl. ¶¶ 7–8.) Bank of Lincolnwood agreed to disburse the $2,950,000

in periodic advances over the length of the project. (*Id*. ¶ 9.) On June 5, 2009, the Illinois Department of Financial Professional Regulation, Division of Banking, closed Bank of Lincolnwood and appointed the FDIC as the receiver. (*Id*. ¶ 11.) As of the date of receivership, Bank of Lincolnwood had disbursed $2,675,918.90 of the Construction Loan, leaving an unfunded balance of $274,081.10. (*Id*. ¶ 10.) Ravenswood fulfilled, or was relieved from its obligation to fulfill, "all conditions precedent to the FDIC's obligation to advance the full amount committed under the Construction Loan." (*Id*. ¶ 19.)

On or about July 30, 2009, the FDIC rejected Ravenswood's requested disbursement of additional funds under the Construction Loan. (*Id*. ¶ 13.) The FDIC then repudiated the Construction Loan on September 28, 2009. (*Id*. ¶ 14.) Ravenswood submitted a proof of claim to the FDIC on December 9, 2009, within ninety days of the repudiation. (*Id*. ¶ 15.) In its claim, Ravenswood sought recovery of its "actual direct compensatory damages[,]" in the amount of $1,407,556, "suffered as a result of the FDIC's repudiation of its obligations . . . under the Construction Loan." (*Id*. ¶¶ 15, 20.) The FDIC disallowed Ravenswood's claim on January 6, 2010 and granted Ravenswood sixty days from that date to challenge the FDIC's disallowance through a formal lawsuit. (*Id*. ¶ 16.) On February 17, 2010, Ravenswood initiated this case. (*Id*. ¶ 17.)

**STANDARD OF REVIEW**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *see Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949–50 (2009) (extending *Twombly* from antitrust to litigation generally and stating that a court's determination "whether a complaint states a plausible claim for relief will . . . be a context-specific task"); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776–77 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quotation omitted); *see also* Fed. R. Civ. P. 8(a). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 129 S. Ct. at 1949–50; *Thompson v. Ill. Dep't. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

## ANALYSIS

The parties do not dispute the FDIC's authority, as receiver of Bank of Lincolnwood, to repudiate Ravenswood's Construction Loan. Rather, the issue is whether Ravenswood is entitled to the damages it claims to have suffered as a result of the repudiation. The FDIC contends that

the damages alleged by Ravenswood do not fall within the category of actual direct compensatory damages as limited under § 1821(e)(3) of FIRREA. (Mot. at 5.)

Under FIRREA, the FDIC, as receiver of an insolvent bank, has the power to repudiate any contract of the failed institution which it "determines to be burdensome; and . . . the . . . repudiation of which . . . will promote the orderly administration of the institution's affairs[,]" as long as the repudiation is made "within a reasonable period" after the FDIC's appointment. 12 U.S.C. § 1821(e)(1), (2). While repudiation of the contract relieves the receiver of its obligation to fulfill the contract, "the repudiation is treated as a breach of contract that gives rise to an ordinary contract claim for damages, if any." *Howell v. FDIC*, 986 F.2d 569, 571 (1st Cir. 1993); *see Resolution Trust Corp. v. Mgmt., Inc.*, 25 F.3d 627, 631 (8th Cir. 1994). The types of damages recoverable against the FDIC are significantly limited under FIRREA. *Lawson v. FDIC*, 3 F.3d 11, 15 (1st Cir. 1993); *Howell*, 986 F.2d at 572. The FDIC is liable only for actual direct compensatory damages determined as of the date of its appointment as receiver. 12 U.S.C. § 1821(e)(3)(A). Compensable damages under the statute specifically do not include: "(I) punitive or exemplary damages; (ii) damages for lost profits or opportunity; or (iii) damages for pain and suffering." 12 U.S.C. § 1821(e)(3)(B).

Thus, to be compensable under FIRREA, Ravenswood's damages must be: (1) fixed and determined as of the date of receivership; and (2) fall within the scope of allowable damages as limited under § 1821(e)(3)(B). 12 U.S.C. § 1821(e)(3); *Citibank (S.D.), N.A. v. FDIC*, 827 F. Supp. 789, 791 (D.D.C. 1993), *modified in part on other grounds*, 857 F. Supp. 976 (D.D.C. 1994); *Nashville Lodging Co. v. Resolution Trust Corp.*, 59 F.3d 236, 244–47 (D.C. Cir. 1995).

### A. Fixed and Determined Damages

The first issue before us is whether Ravenswood's alleged damages were "fixed and determined" on the date of the FDIC's appointment as receiver. Damages are fixed and determined on the date of receivership where "the contractual right at issue vested prior to the appointment of the FDIC as receiver." *Citibank*, 827 F. Supp. at 791; *see also Nashville Lodging*, 59 F.3d at 244 ("[W]hether the . . . rights were sufficiently vested [is determined by] the present value of the right . . . as of the date the receiver took over."). A contractual right is sufficiently vested where "the insolvent bank's promise was 'binding and enforceable under contract law'" at the time of the appointment of the receiver. *Nashville Lodging*, 59 F.3d at 244; *see Office & Prof'l Employees Int'l Union, Local 2 v. FDIC*, 27 F.3d 598, 602 (D.C. Cir. 1994). Therefore, as long as the contractual right existed on the date of receivership, the liability is "sufficiently 'fixed and certain' to be provable against the FDIC at the moment the FDIC became the receiver."[1] *Navarro v. FDIC*, 371 F.3d 979, 982 (7th Cir. 2004 (quoting *Soriero v. FDIC*, 887 F. Supp. 103, 106 (E.D. Pa. 1995)); *McMillian v. FDIC*, 81 F.3d 1041, 1050 (11th Cir. 1996).

In *Nashville Lodging*, the D.C. Circuit found sufficient evidence of fixed and determined damages where plaintiff's refinancing agreement with a savings and loan association was "binding and enforceable" on the date of receivership, thus giving plaintiff a vested right to the

---

[1] The concepts of vesting and provability, which require that the liability of the insolvent bank be fixed and determined prior to receivership to sustain a provable claim against the receiver, arise from common law existing prior to the enactment of FIRREA. *Nashville Lodging*, 59 F.3d at 244; *McMillian*, 81 F.3d at 1046. However, since neither party disputes that Ravenswood performed "all conditions precedent to the FDIC's obligation" to disburse the unfunded balance of the Construction Loan, we need not address the continued applicability of these common law concepts. (Compl. ¶ 19.)

performance of the contract. 59 F.3d at 244. By contrast, in *Gertner v. FDIC*, the court found insufficient evidence of fixed and determined damages where plaintiffs had accepted a mortgage commitment offer but had not closed on that agreement before the bank was declared insolvent and the FDIC became receiver. 814 F. Supp. 177, 178–79 (D. Mass. 1992). Because the *Gertner* plaintiffs did not have an enforceable contract with the bank prior to receivership, they did not have a vested right to fulfillment of the contract, and thus could not have suffered damages determined as of the date of receivership. *Id.* at 179.

In this case, the FDIC argues that Ravenswood had not suffered any damages as of the date of receivership since the FDIC did not repudiate the Construction Loan until over three months after it was appointed as receiver. (Mot. at 5.) However, as in *Nashville Lodging*, where plaintiff had a vested right to the performance of an enforceable contract at the time of receivership, Ravenswood had a vested right to disbursement of the unfunded balance of the Construction Loan at the time of the FDIC's appointment as receiver. Contrary to *Gertner*, where plaintiff and the insolvent bank had not formalized the mortgage agreement in a binding contract prior to receivership, Ravenswood and Bank of Lincolnwood executed the Construction Loan approximately eight months prior to receivership, giving Ravenswood a vested right to the unfunded balance of its loan. Therefore, Ravenswood's alleged damages were fixed and determined on the date of receivership.

### B. Scope of Allowable Damages

The second issue before us is whether the damages alleged by Ravenswood fall within the scope of actual direct compensatory damages as limited under FIRREA. Section 1821(e)(3)(B) explicitly excludes the compensability of three types of damages: "(I) punitive or

exemplary damages; (ii) damages for lost profits or opportunity; or (iii) damages for pain and suffering." 12 U.S.C. § 1821(e)(3). In its Complaint, Ravenswood claims to have "suffered actual direct compensatory damages in the amount of $1,407,556 as a result of the FDIC's repudiation of its obligation under the Construction Loan." (Compl. ¶ 20.) However, Ravenswood provides no explanation as to how it arrived at this number, making it impossible for us to determine whether the alleged damages fall within the three categories that are not compensable under the statute.

In its Response, Ravenswood appears to define its actual direct compensatory damages as "the diminution in value of the Property caused by the repudiation." (Resp. at 4.) However, Ravenswood does not describe the kind of diminution in value it suffered. If Ravenswood is alleging its right to recover lost profits (e.g., the difference between the value of the unfinished construction project and the value of the finished construction project), such damages would not be compensable under FIRREA.[1] *See* 12 U.S.C. § 1821(e)(3)(B)(ii). To the extent that Ravenswood is referring to another theory of diminution in value, some courts have allowed a narrower definition of these types of damages. *See, e.g.*, *FDIC v. Parkway Executive Office Ctr.*, No. 96–121 & 96–122, 1998 U.S. Dist. LEXIS 275, at *12–15 (E.D. Pa. Jan. 9, 1998). Although we could speculate as to what Ravenswood considers its alleged damages, the complaint must plead facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. Because we cannot ascertain whether the claimed damages would be compensable under FIRREA, Ravenswood has failed to state a plausible claim for relief that

---

[1] The FDIC argues that the damages Ravenswood seeks for "the diminution in value of the Property caused by the repudiation" (Resp. at 4) constitute lost profits and are not compensable under FIRREA. (Reply at 3.) However, as Ravenswood's Complaint does not adequately plead its alleged damages, we decline to speculate as to its possible implications.

would allow us to reasonably infer, beyond mere speculation, that the FDIC is liable for the alleged amount. *See id.*; *Iqbal*, 129 S. Ct. at 1949. Therefore, without deciding which type of diminution of value is at issue or whether it would be compensable under FIRREA, we grant the motion.

## CONCLUSION

For the reasons stated above, we grant the FDIC's motion to dismiss. We also grant Ravenswood leave to file an amended complaint within thirty days, to the extent that it is able to do so consistent with this order and Rule 11. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: July 6, 2010