# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RAVENSWOOD, LLC, ) | |
| ) | |
| Plaintiff, ) | No. 10-cv-01064 |
| ) | |
| v. ) | |
| ) | |
| FEDERAL DEPOSIT INSURANCE ) | |
| CORPORATION, in its capacity as receiver for ) | |
| Bank of Lincolnwood, Lincolnwood, Illinois ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is the Federal Deposit Insurance Corporation's ("FDIC") motion to dismiss Ravenswood Center, LLC's ("Ravenswood") Amended Complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). (Mot.) Previously, we granted the FDIC's motion to dismiss Ravenswood's Initial Complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). (Init. Compl.; Ord. 7/6/10.) Ravenswood filed its Amended Complaint in a timely manner. (Am. Compl.) The FDIC now claims we lack subject matter jurisdiction due to Ravenswood's failure to exhaust the administrative remedies established under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"). 12 U.S.C. § 1811 *et seq*. We agree and grant the FDIC's motion to dismiss.

## BACKGROUND

As we stated in our prior order granting the FDIC's initial motion to dismiss, this case arises from the FDIC's repudiation of a construction loan agreement ("loan") between Ravenswood and the Bank of Lincolnwood, for which the FDIC became receiver on June 5, 2009. (Ord. 7/6/10 at 1–2.) We need not reiterate all the facts of the case here but instead highlight those relevant to this motion.

We begin with a short statement of the procedural history subsequent to our granting the first motion to dismiss. In granting that motion, we determined that the Initial Complaint failed to allege facts sufficient to indicate Ravenswood suffered "actual direct compensatory damages." (Ord. 7/6/10 at 7.) FIRREA limits Ravenswood's right to recover to this type of damages. 12 U.S.C. § 1821(e)(3)(A)(1). Other types of damages, specifically punitive or exemplary damages, damages for lost profits or opportunity, or damages for pain and suffering, are not recoverable. 12 U.S.C. § 1821(e)(3)(B)(i)–(iii). Although Ravenswood claimed $1,407,556 in damages, we stated that "Ravenswood provides no explanation as to how it arrived at this number, making it impossible for us to determine whether the alleged damages fall within the three categories that are not compensable under the statute." (Ord. 7/6/10 at 7.)

Ravenswood subsequently filed an Amended Complaint alleging "actual direct compensatory damages" based on the "diminution in value" of its property as a result of the FDIC's repudiation of the loan. (Am. Compl. ¶¶ 20–23.) The Amended Complaint states as the basis for this diminution in value the "value of the Property with the Construction Loan in place as of June 5, 2009 (the date the FDIC was appointed receiver)" as compared to "the value of the Property without the Construction Loan in place following the FDIC's repudiation on or about

September 28, 2009." (*Id.* ¶ 22.) The Amended Complaint does not specify what these two values are.

The FDIC argues we lack subject matter jurisdiction, because Ravenswood failed to adequately present its diminution in value claim in the FDIC's administrative review process. (Mem. at 2–3.) In support of its motion, the FDIC points to the Proof of Claim Ravenswood filed as part of the FDIC's administrative review process. (Furnier Aff., Ex. 1 at 6.) In the space for the description of its claim, Ravenswood stated: "REPUDIATION OF CONSTRUCTION CONTRACT BY LENDER AND FDIC AS RECEIVER FOR BANK OF LINCOLNWOOD (FAILED INSTITUTION)[.]" (*Id.*) Ravenswood also stated the amount of the claim to be $1,407,556.00, the same amount sought in the Amended Complaint. (*Id.*; Am. Compl. ¶ 21.) But according to the FDIC, Ravenswood failed to present an explanation of how it calculated this amount in the Proof of Claim. (Mem. at 4.) Such an explanation is crucial to determining whether Ravenswood's claim is for "actual direct compensatory damages" or "damages for lost profits or opportunity." 12 U.S.C. § 1821(e)(3)(A)–(B). As we noted above and in our prior order, FIRREA permits the former but bars the latter. (Ord. 7/6/10 at 6–7.)

Ravenswood responds that it has consistently presented a diminution in value claim similar to the one allowed in *FDIC v. Parkway Exec. Office Center*, Case No. 96-121, 1998 WL 18204, at *5 (E.D. Pa. Jan. 9, 1998) ("*Parkway*"). According to theory behind this claim, the FDIC's repudiation of the loan converted Ravenswood's property from "a partially renovated building with sufficient funding in place for its full development, into an incomplete building with insufficient financing for its completion." (Am. Compl. ¶ 20.) In other words, Ravenswood seeks the difference in the market value of its property with a financed and,

presumably, ongoing construction project and the market value of its property with no financing and, presumably, no ongoing construction project.

Ravenswood points to two letters from its attorney to the FDIC as evidence that the FDIC knew the basis of Ravenswood's claim during the administrative review process. (Resp. at 7.) On August 5, 2009, nearly two months prior to the FDIC's repudiation of the loan on September 28, 2009, Ravenswood's attorney sent the FDIC a letter urging the FDIC not to repudiate the loan. In that letter, Ravenswood's attorney stated that Ravenswood "would be entitled to offset any diminution in the value of the Project caused by the repudiation." (Resp., Ex. 1 at 1.) Similarly, Ravenswood's attorney submitted another letter to the FDIC urging reconsideration of the repudiation one month after the repudiation but prior to the formal filing of the Proof of Claim. The letter cites *Parkway* in support of the contention that Ravenswood "is entitled to offset any diminution in the value of the Project caused by the repudiation[.]" (Resp., Ex. 2 at 1.) The letter elaborates:

> Borrower [Ravenswood] has been unable to secure replacement financing to complete the construction. As result [sic], the Project is valued as of the date of the Receivers' appointment, in its condition at that point in time.

(*Id.* at 3.) The letter fails to state, however, what the value on that date was or to what that value ought to be compared. Nevertheless, Ravenswood asserts that these letters demonstrate that it "repeatedly disclosed to the FDIC" the basis for its claim during the administrative review process. (Resp. at 7.)

## STANDARD OF REVIEW

The FDIC seeks dismissal of Ravenswood's Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Fed. R. Civ. P. 12(b)(1). Jurisdiction is the "power to decide" and must be "conferred, not assumed." *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court may look beyond the complaint to pertinent evidence submitted by the parties. *See United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). The plaintiff faced with a properly supported 12(b)(1) motion to dismiss bears the burden of proving that the jurisdictional requirements have been met. *See Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

## ANALYSIS

FIRREA deprives this Court of jurisdiction over Ravenswood's claim unless Ravenswood has properly exhausted the FDIC's administrative review process. 12 U.S.C. § 1821(d)(13)(D); *Brown Leasing Co. v. FDIC*, 833 F. Supp. 672, 675 (N.D. Ill. 1993) (citing *Marquis v. FDIC*, 965 F.2d 1148 (1st Cir. 1992)). We have previously held that the exhaustion requirement is satisfied only where the FDIC has received "fair notice of the facts and legal theories on which a claimant seeks relief from the failed institution." *Brown Leasing Co. v. FDIC*, 833 F. Supp. 672, 675 (N.D. Ill. 1993).

The FDIC argues Ravenswood failed to provide fair notice of the facts and legal theory on which it sought relief during the administrative review process. (Mem. at 2–4.) Although the two letters Ravenswood submitted indicate that it notified the FDIC of the legal theory behind its claim—*Parkway*-style diminution in value—we conclude that Ravenswood failed to provide the

FDIC with fair notice of the facts required to support this theory. (Resp., Exs. 1–2.) Without notice of these facts, the FDIC was unable, as are we, to determine whether Ravenswood has suffered the type of damages compensable under FIRREA. 12 U.S.C. § 1821(e)(3)(A)–(B).

The crucial facts Ravenswood failed to provide are the numbers Ravenswood subtracted, added, multiplied, divided, or otherwise computed to get its claimed damages of $1,407,556. In our prior Order, we specifically acknowledged Ravenswood's lack of an "explanation as to how it arrived at this number." (Ord. 7/6/10 at 7.) Ravenswood responded to this prodding in its Amended Complaint by parroting the language of *Parkway* to describe the difference in the "value of the Property with the Construction Loan in place as of June 5, 2009 (the date the FDIC was appointed receiver)" as compared to "the value of the Property without the Construction Loan in place following the FDIC's repudiation on or about September 28, 2009." (Am. Compl. ¶ 22.) And yet, Ravenswood still provided no figures indicating what these two property values were. The documents before us, including those submitted by Ravenswood, suggest that the FDIC fared no better in getting this information during the administrative review process. Without these numbers, the FDIC had no knowledge of the factual basis upon which Ravenswood sought relief.

Furthermore, as the FDIC points out, the difference between the "as built" appraisal value of $3,900,000 and the $2,675,918.90 of the loan that was dispersed—$1,224,081.10—is curiously close to the $1,407,556 damages figure.[1] (Mem. at 4.) Although we are unable to

---

[1] We have excluded the $185,110 from the interest reserve that the FDIC included in its computation. (Mem. at 4.) Ravenswood objected to this figure as irrelevant to its damages calculation. (Resp. at 5 n.4.) Excluding this figure does not alter the calculation or its implication substantially, as the similarity between the $1,224,081.10 figure and the $1,407,556 figure is still striking.

conclude that this computation is the basis for Ravenswood's damages figure, we are also unable to conclude otherwise in light of Ravenswood's muteness on this point. If it is the basis for the damages figure, then Ravenswood would be seeking "damages for lost profits," which are not permitted under FIRREA. 12 U.S.C. § 1821(e)(3)(B)(ii). Thus, without knowing of any other basis for Ravenswood's damages figure, the FDIC had reason to question whether Ravenswood's invocation of *Parkway*'s diminution in value theory was an attempt to circumvent FIRREA's damages limitations.

Lastly, Ravenswood objects to the FDIC's demand of two appraisals pre-dating the conclusion of the FDIC's administrative review process as having "no basis in law." (Mem. at 6–7; Resp. at 8.) We need not decide as a matter of law whether two appraisals are necessary to adequately present a *Parkway*-style claim during the FDIC's administrative review process. We can state, however, that the FDIC was entitled to know the factual basis for Ravenswood's damages claim. *See Brown Leasing Co.*, 833 F. Supp. at 675.

## CONCLUSION

Because Ravenswood failed to provide the factual basis for its damages claim to the FDIC, it did not adequately exhaust FIRREA's mandatory administrative review process. As such, we lack jurisdiction to hear Ravenswood's claim. We therefore grant the FDIC's motion to dismiss for lack of subject matter jurisdiction. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Date: November 23, 2010