UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAVENSWOOD, LLC, ) | |
| ) | |
| Plaintiff, ) | No. 10-cv-1064 |
| ) | |
| v. ) | |
| ) | |
| FEDERAL DEPOSIT INSURANCE ) | |
| CORPORATION, in its capacity as receiver for ) | |
| Bank of Lincolnwood, Lincolnwood, Illinois, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

In the present motion, Ravenswood Center, LLC ("Ravenswood") asks us to alter or amend our order of November 23, 2010 ("Order") dismissing Ravenswood's claim due to lack of subject matter jurisdiction. (Dkt. Nos. 40, 42.) We deny Ravenswood's motion.

**I. BACKGROUND**

Ravenswood filed this claim, because the Federal Deposit Insurance Corporation in its capacity as receiver ("FDIC-R") of the failed Bank of Lincolnwood ("Bank") repudiated a construction loan agreement between the Bank and Ravenswood. (Amend. Compl. ¶¶ 20–24.) The loan agreement provided that the Bank would loan Ravenswood $2,950,000 for the renovation of an industrial loft building into office suites to be leased to commercial tenants. (*Id.* ¶¶ 7–9.) The Bank had disbursed $2,675,918.90 of the $2,950,000 total when the FDIC-R became receiver on June 5, 2009. (*Id.* ¶¶ 10–11.) Ultimately, pursuant to its authority under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), *see* 12 U.S.C.

-1-

§ 1821(e)(1), the FDIC-R repudiated the loan agreement on September 28, 2009 and refused to fund the outstanding portion of the loan. (*Id.* ¶ 15.) Because of this repudiation, Ravenswood claims it has suffered $1,407,556 in damages. (*Id.* ¶ 21.)

The nature of the damages Ravenswood claims to have suffered has been the subject of dispute in this litigation. FIRREA limits claims for damages arising from the FDIC-R's repudiation of contracts to "actual direct compensatory damages" and specifically excludes "damages for lost profits or opportunity." 12 U.S.C. § 1821 (e)(3). Indeed, we dismissed Ravenswood's initial complaint without prejudice, because we were unable to determine whether the damages Ravenswood sought were compensable under FIRREA. (Dkt. No. 23 at 1.)

Following our dismissal of the initial complaint, Ravenswood filed an amended complaint explaining its damages as "the difference between: (1) the value of the Property with the Construction Loan in place as of June 5, 2009 (the date the FDIC was appointed receiver); and, (2) the value of the Property without the Construction Loan in place following the FDIC's repudiation on or about September 28, 2009." (Amend. Compl. ¶ 22.) The FDIC-R then moved for dismissal of the amended complaint based on Ravenswood's failure to exhaust the administrative claims process. (Dkt. Nos. 29–31.) Specifically, the FDIC-R argued that Ravenswood's amended complaint presented a diminution in value claim that had not been raised in the administrative claims process. (Dkt. No. 31 at 2.) Because FIRREA requires exhaustion of the administrative claims process before a district court has subject matter jurisdiction to review a claim, the FDIC-R moved to dismiss Ravenswood's claim pursuant to Rule 12(b)(1). 12 U.S.C. § 1821 (d)(13)(D); Fed. R. Civ. P. 12(b)(1).

We granted the FDIC-R's motion to dismiss for lack of jurisdiction, because we concluded that Ravenswood had failed to notify the FDIC-R of the factual basis for its diminution in value claim. (Dkt. No. 40 at 5–7.) Although Ravenswood produced two letters from counsel invoking a diminution in value theory, we found that Ravenswood had failed to provide the FDIC-R with any factual basis to evaluate that theory. (*Id.*) Ravenswood now moves for reconsideration of that Order. (Dkt. No. 42.)

## II.  STANDARD

Ravenswood brings its Motion pursuant to Rule 59(e). Fed. R. Civ. P. 59(e). To succeed on a Rule 59(e) motion, the moving party must present newly discovered evidence, point out an intervening change in controlling law, or clearly establish that the court committed a manifest error of law or fact. *See Caisse Nationale de Credit Agricole v. CBA Indus., Inc.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996); *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). A Rule 59(e) motion "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Indeed, reconsideration is appropriate in very limited circumstances, such as "where (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law . . . or (5) there has been a controlling or significant change in the facts." *BP Amoco Chem. v. Flint Hills Res., LLC*, 489 F. Supp. 2d 853, 856 (N.D. Ill. 2007); *Bank of Waunakee v. Rochester Cheese Sales, Inc.*,

906 F.2d 1185, 1191-92 (7th Cir. 1990); *see also Hickory Farms, Inc. v. Snackmasters, Inc.*, 509 F.Supp.2d 716, 719 (N.D. Ill. 2007) ("Reconsideration is appropriate, generally speaking, only when the Court overlooked or misunderstood something.").

### III.  ANALYSIS

In its motion, Ravenswood argues that our Order violates its due process rights. Specifically, Ravenswood argues that our Order denies it the opportunity to seek review of the FDIC-R's disallowance of its claim. (Mem. at 7.) Ravenswood also claims that the reason we dismissed its amended complaint—Ravenswood's failure to provide a factual basis for its diminution in value theory during the administrative claims process—was not the reason the FDIC-R provided in disallowing Ravenswood's claim. (*Id.* at 8.) Thus, Ravenswood argues that the notice it received regarding the denial of its claim was inadequate. (*Id.*)

Ravenswood also contends that the FDIC-R is responsible for any insufficiency in the proof submitted in support of its claim. (*Id.* at 9.) In support of this argument, Ravenswood submits an affidavit and emails purporting to show that the FDIC-R, after requesting more documentation from Ravenswood, denied its claim without allowing it sufficient time to submit those documents. (*Id.*; Hatch Aff., Exs. 2–5.) Ravenswood alleges that the FDIC-R "denies such claims as a matter of policy, regardless of supporting documentation or facts." (Mem. at 9.) Lastly, Ravenswood submits a document purporting to show its diminution in value damages stemming from the FDIC-R's repudiation of the construction loan. (Mem., Ex. B.)

We conclude that Ravenswood's motion is based largely on new arguments and new evidence that it has improperly raised for the first time at this stage.  But even when we consider

-4-

the new evidence Ravenswood offers, it ultimately vindicates our conclusion that we lack jurisdiction over Ravenswood's diminution in value claim.

**A. Ravenswood Improperly Presents New Arguments and New Evidence.**

As an initial matter, Ravenswood presents new arguments and new evidence that "could and should have been presented to the district court prior to the judgment." *Bordelon*, 233 F.3d at 539. Specifically, Ravenswood did not raise its inadequate notice argument when it could have done so in response to the FDIC-R's motion to dismiss the amended complaint. The evidence Ravenswood offers in support of this argument—an affidavit and emails purporting to put the blame on the FDIC-R for Ravenswood's failure to substantiate its claim during the administrative claims process—could have been presented previously, as well. (Hatch Aff. & Exs.) And most significantly, the document purporting to show Ravenswood's damages—a spreadsheet with figures allegedly "[c]omputed 11/30/2009"—could and should have been submitted to the FDIC-R during the administrative claims process and to this Court when our order dismissing the initial complaint clearly called for it. (Mem., Ex. B.) As the party bearing the burden of proving subject matter jurisdiction, Ravenswood's failure to produce this evidence is inexcusable. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003) ("The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction.").

Ravenswood contends, however, that it is entitled to present new arguments and new evidence, because "the court has made a decision outside the adversarial issues presented to the court by the parties[.]" (Reply at 2 (quoting *Killian v. Concert Health Plan Ins. Co.*, No. 07-4755, 2010 WL 3000205, at *1 (N.D. Ill. Jul. 28, 2010)).) Ravenswood argues that our Order "focused not on whether Ravenswood had consistently asserted the same claim in its

administrative claim and the amended complaint, but on the sufficiency of the documents that Ravenswood tendered to the FDIC-R in support of its administrative claim." (*Id.* at 3.)

Ravenswood's characterization of our Order as reaching a decision outside the adversarial issues presented is inaccurate. The issue the FDIC-R presented in its motion to dismiss the amended complaint was Ravenswood's failure to exhaust the administrative claims process. Specifically, the FDIC-R argued that Ravenswood "failed to exhaust its administrative remedies through the claims process by presenting the claim now alleged for the first time in this litigation." (Dkt. No. 31 at 2.) In support of its motion, the FDIC-R submitted Ravenswood's administrative claim file, which does not include any reference to Ravenswood's diminution in value theory. (Dkt. No. 32, Ex. 1.) Indeed, Ravenswood's proof of claim made no mention of its diminution in value theory but instead described the basis of its claim as being "REPUDIATION OF CONSTRUCTION CONTRACT BY LENDER AND FDIC AS RECEIVER FOR BANK OF LINCOLNWOOD (FAILED INSTITUTION)." (Dkt. No. 32, Ex. 1 at 6.) The only documentation provided in support of Ravenswood's claim was the construction loan agreement. (*Id.* at 8–88.)

Contrary to Ravenswood's assertion, the FDIC-R pointed to Ravenswood's lack of documentation of damages in its motion to dismiss the amended complaint.[1] In fact, the FDIC-R

---

[1] Ravenswood faults our Order for making "inferential findings of fact without an evidentiary hearing" based on our conclusion that the documents in the record "suggest[ed] that the FDIC fared no better" than we did in obtaining the basis for Ravenswood's damages calculation. (Mem. at 9 (quoting Dkt. No. 40 at 6).) But this conclusion relied not upon an inference but upon the affidavit and file that the FDIC-R submitted with its motion to dismiss. (Dkt. No. 32 & Ex.) The affidavit verified that the attached file was "a copy of the administrative claim file for Ravenswood Center, LLC[.]" (Dkt. No. 32 at 1.) This file contained no appraisals or other basis for determining Ravenswood's damages based on a diminution in value theory. In its response to the motion, Ravenswood did not indicate that it had in fact

cited Ravenswood's failure to produce appraisals comparing the property value with the construction loan in place and without the loan in place as evidence that Ravenswood had "concocted" its diminution in value claim. (Dkt. No. 31 at 2–5.) The FDIC-R surmised that Ravenswood's damages were in fact based on the difference between the "as built" appraisal value of the property and the amount of the construction loan that had been funded as of repudiation. (*Id.* at 4.) In essence, the FDIC-R argued that Ravenswood is seeking unrecoverable lost profits, submitted a claim to that effect in the administrative claims process, and called that claim something else in its amended complaint in order to avoid FIRREA's damages limitations. 12 U.S.C. § 1821(e)(3)(B)(ii).

Ravenswood responded to the FDIC-R's argument by presenting two letters from its attorney to the FDIC-R invoking Ravenswood's purported right to offset any diminution in the value of the property caused by the FDIC-R's repudiation of the construction loan agreement. (Dkt. No. 34, Exs. 1–2.) Although this evidence had not been included in the proof of claim submitted to the FDIC-R, we inferred that Ravenswood's diminution in value theory was not entirely new to the FDIC-R.[2] (Dkt. No. 40 at 5–6.)

---

submitted such evidence but instead argued that it had not been obligated to do so. (Dkt. No. 34 at 8–9.) As such, we properly exercised our authority to "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993).

[2] The absence of any reference to diminution in value in Ravenswood's proof of claim and accompanying documentation indicates that Ravenswood had failed to present this theory at the most relevant time for doing so. As we discuss, the claim that Ravenswood actually presented in the administrative claims process can only be construed as a challenge to the repudiation itself, rather than an attempt to get diminution in value damages flowing from the repudiation.

But the crucial determination in our Order was not whether Ravenswood had ever referenced a diminution in value theory in any correspondence with the FDIC-R. Instead, the primary concern was that Ravenswood had failed to offer any evidence, such as appraisals or the spreadsheet Ravenswood now offers, to substantiate this theory. Requiring claimants to substantiate their claims during the administrative claims process ensures that the FDIC-R has a fair opportunity to determine whether it is in fact obligated to pay them before being hauled into court. *See Brown Leasing Co. v. FDIC*, 833 F. Supp. 672, 675 (N.D. Ill. 1993) ("This Court simply finds that the FDIC is entitled to fair notice of the facts and legal theories on which a claimant seeks relief from the failed institution."); *see also* 12 U.S.C. § 1821 (d)(5)(D)(I) ("The receiver may disallow any portion of any claim by a creditor or claim of security, preference, or priority *which is not proved to the satisfaction of the receiver*.") (emphasis added). In this way, the exhaustion requirement allows the FDIC-R "to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation." *FDIC v. Parkway Exec. Office Center*, No. 96-121, 1997 WL 535164, at *6 (E.D. Pa. Aug. 18, 1997) ("*Parkway I*") (quoting *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 396 (3d Cir. 1991)). Our Order held that, because Ravenswood had not provided the factual basis for its claim, it had effectively undermined this statutorily-mandated process. Ravenswood's argument that our decision exceeded the scope of the adversarial issues presented is thus without merit.

**B. Ravenswood's New Evidence Further Vindicates Our Order.**

Because Ravenswood's reason for offering new evidence is without merit, we need not consider it. Nonetheless, an examination of this new evidence would in fact vindicate our Order.

### 1. Hatch Affidavit and Emails with the FDIC-R

In support of its motion, Ravenswood offers an affidavit from Sonserese Hatch, a paralegal for Ravenswood's attorney. (Hatch Aff. & Exs.) The affidavit incorporates several emails between Hatch and the FDIC-R during the administrative claims process. In one email dated December 22, 2009, thirteen days after Ravenswood submitted its claim, the FDIC-R's agent, David Landry, requested the basis for Ravenswood's claim:

> Would you please provide me with a written summary of the basis for this claim, is it the remaining loan balance held at the bank at the time of closing? If so is that where claimant (your client) arrives at the claim amount of $1,407,556.00 against the bank? If not then where does that amount come from? Also I need copies of all draws taken out plus copies of all payments made by claimant.

(Hatch Aff., Ex. 3.) Hatch indicates in her affidavit that "[i]n response to this request, [she] began assembling the documents and information that [Landry] requested." (Hatch Aff. ¶ 5.) But even so, Hatch did not respond to this email until January 11, 2010—nearly three weeks later.[3] When Hatch did respond, she said she would "try and provide the information you need by the end of the week." (*Id.*, Ex. 4.)

As Hatch's affidavit indicates, however, the FDIC-R had already decided to disallow Ravenswood's claim by the time she responded. (Hatch Aff. ¶¶ 6–7.) In a latter dated January 6, 2010 and received by Hatch just hours after she responded to Landry's email, the FDIC-R disallowed Ravenswood claim, saying:

> The Receiver has repudiated the contractual agreement representing this Construction Mortgage Loan Agreement; therefore, your claim is disallowed.

---

[3] We take judicial notice of the fact that this exchange occurred in part during the holiday season. Regardless, Ravenswood's counsel made no effort to respond to the FDIC-R's inquiry until well after the holidays.

(*Id.*, Ex. 5.) Hatch stated that upon receiving this letter she immediately contacted the FDIC-R to inquire why Ravenswood's claim had been denied without the FDIC-R considering the documents it had requested. (Hatch Aff. ¶ 7.) Hatch further stated that Landry indicated that "he was required to deny the claim and that the denial had nothing to do with documents that Ravenswood did nor did not produce." (*Id.*)

As the basis for its inadequate notice argument, Ravenswood cites the failure of the FDIC-R's January 6 letter to mention "the absence of supporting facts as the basis for the denial [of Ravenswood's claim], or that the damages that Ravenswood sought were not recoverable under FIRREA." (Mem. at 8.) But Ravenswood's argument is illogical in light of the fact that the FDIC-R's basis for its motion to dismiss the amended complaint was Ravenswood's failure to adequately present the diminution in value theory in the administrative claims process. How was the FDIC-R supposed to respond to a theory it did not know Ravenswood was presenting? Ravenswood's failure to mention its diminution in value theory in its proof of claim or to provide any calculation of its damages based on that theory made the claim appear to be a challenge to the repudiation itself. Again, the proof of claim described the basis of the claim as "REPUDIATION OF CONSTRUCTION CONTRACT BY LENDER AND FDIC AS RECEIVER FOR BANK OF LINCOLNWOOD (FAILED INSTITUTION)." The FDIC-R's December 22 email asking for a "written summary of the basis for this claim" further affirms that it had no idea what the basis for Ravenswood's $1,407,556 claim was other than to challenge the repudiation. Thus, even Ravenswood's new evidence demonstrates its failure to adequately articulate that its claim was based on a diminution in value stemming from the repudiation and not a challenge to the repudiation itself.

Given that the proof of claim appeared to be a challenge to the repudiation, the FDIC-R's notice of disallowance was accurate and adequate. As the Third Circuit has stated, "Once the receiver makes a finding that a contract is burdensome, it does not have to give reasons for its decision." *McCaron v. FDIC*, 111 F.3d 1089, 1094 (3d Cir. 1997). The FDIC-R had said that the construction loan was burdensome in its September 28, 2009 repudiation letter. (Dkt. No. 32, Ex. 1 at 3.) The FDIC-R did not have to provide Ravenswood with any further explanation in response to Ravenswood's proof of claim. Thus, Ravenswood's insufficient notice argument is without merit.

**2. Spreadsheet Calculation of Ravenswood's Damages**

Ravenswood has also produced a spreadsheet purporting to show the basis for its diminution in value damages. (Mem., Ex. B.) Ravenswood offers no explanation as to why this document—which has figures that were apparently computed on November 30, 2009, nine days prior to Ravenswood's submission of its proof of claim—was not submitted to the FDIC-R with the proof of claim. As to why Ravenswood did not submit this document with its amended complaint, Ravenswood argues that it "is not required to plead appraisals or damage calculations in its complaint." (Mem. at 11.) Ravenswood nevertheless introduced this document at this stage "to avoid additional concerns" on the issue. (*Id*. at 7.)

Ravenswood's reluctance to produce this document until now demonstrates two things: first, Ravenswood fails to understand that it bears the burden of proving subject matter jurisdiction; and second, Ravenswood is and always has been seeking damages for lost profits flowing from the FDIC-R's repudiation of the construction loan agreement. Regarding jurisdiction, we have made clear that FIRREA limits our jurisdiction to those claims against the

FDIC-R that have been properly exhausted in the administrative claims process. (*See* Dkt. No. 40 at 5 ("FIRREA deprives this Court of jurisdiction over Ravenswood's claim unless Ravenswood has properly exhausted the FDIC-R's administrative review process.") (citing 12 U.S.C. § 1821 (d)(13)(D)).) As the party asserting jurisdiction, Ravenswood has the burden of proving it. *United Phosphorus*, 322 F.3d at 946. Furthermore, we are entitled to weigh the evidence presented to determine whether jurisdiction has been established. *Id.*; *see also Capitol Leasing Co.*, 999 F.2d at 191 ("The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."). That is why Ravenswood ought to have produced this spreadsheet and any other documents purporting to establish our jurisdiction when the FDIC-R moved for dismissal based on lack of jurisdiction.

And yet, it is obvious why Ravenswood has not produced the spreadsheet until now: the document shows that Ravenswood's damages calculation is based on "damages for lost profits or opportunity" and not "actual direct compensatory damages." 12 U.S.C. § 1821 (e)(3). Of course, Ravenswood says otherwise in arguing that the spreadsheet reflects "a discounted cash flow method known in the appraisal industry as the 'Income Capitalization Approach.'" (Reply at 6.) But Ravenswood's very next sentence reveals the nature of this calculation: "This method is an appropriate appraisal method for *properties that an owner intends to lease to tenants.*" (*Id.* (emphasis added)). In other words, the appraisal value is based on the income to be derived from the property by leasing it to tenants. Such a valuation method is based on lost profits—namely, rental income.

The spreadsheet confirms this fact. Indeed, Ravenswood calculates its diminution in value by multiplying the "Sq[uare] Footage Unusuable Due to Repudiation" and the "Rate/S[quare] F[oot]." (Mem., Ex. B.) This calculation is intended to compare Ravenswood's anticipated rental income from the completely renovated building and the rental income from the partially renovated building with 8,341 square feet of "unusuable"—read, unleaseable—space. Lest there be any doubt, Ravenswood's spreadsheet also incorporates a "10% vacancy assumption." A "vacancy assumption" would only be relevant to a calculation based on anticipated rental income, which the spreadsheet is.

Thus, Ravenswood's spreadsheet demonstrates that it has always been seeking lost profits and not just a diminution in property value like the one presented in the *Parkway* case. As the FDIC-R correctly points out, *Parkway* makes clear that the damages Ravenswood seeks are not compensable under FIRREA. *FDIC v. Parkway Exec. Office Center*, No. 96-121, 1998 WL 18204, at *5 (E.D. Pa. Jan. 9, 1998) ("*Parkway II*"). The *Parkway* court expressly held that the party seeking a diminution in value set off was "not seeking to present evidence of the difference between what the building would have been worth had the construction job been completed and what the building was worth on the day the [receiver] repudiated." *Id.* The court concluded that such damages would "includ[e] future contingencies such as lost profits and opportunities" and would not be recoverable under FIRREA. *Id.* In this case, that is exactly what Ravenswood is seeking. Thus, even if we were to reconsider our dismissal of the amended complaint pursuant to Rule 12(b)(1), Ravenswood has undermined its own claim with this spreadsheet.

**C. Our Order Does Not Preclude Ravenswood's Right to Seek Judicial Review.**

Lastly, Ravenswood argues that our conclusion that we lack jurisdiction over its diminution in value claim "denies Ravenswood its right to seek review of the FDIC-R's denial of its claim." (Mem. at 7.) Ravenswood asserts that FIRREA specifically "provides claimants with the right to seek review of the denial of claims by filing a civil action in the District Court," and thus our failure to exercise judicial review of the FDIC-R's decision "raises significant due process concerns." (*Id.* (citing 12 U.S.C. § 1821(d)(6)(A).)

Ravenswood misunderstands its right to seek judicial review. FIRREA conditions Ravenswood's right to judicial review on the proper exhaustion of the administrative claims process. 12 U.S.C. § 1821(d)(13)(D); *Brown Leasing Co.*, 833 F.Supp. at 674–75; *Marquis v. FDIC*, 965 F.2d 1148, 1152 (1st Cir. 1992). Thus, Ravenswood has no right to judicial review for any claims not adequately exhausted, including, as we have determined, Ravenswood's diminution in value claim.

But Ravenswood did file some claim with the FDIC-R, and so the question remains what the nature of that claim was and whether we must review it. Based on the evidence in the record at this point, Ravenswood's claim appeared on its face to be, if anything, a challenge to the repudiation decision. Although Ravenswood's amended complaint does not assert this claim—perhaps because of the deferential standard under which it would be reviewed—that is the claim for which Ravenswood may have properly satisfied FIRREA's exhaustion requirement. *See* 12 U.S.C. § 1821(e)(1)(B) (allowing the FDIC-R to repudiate such contracts "the performance of which the conservator or receiver, *in the conservator's or receiver's discretion*, determines to be burdensome") (emphasis added); *Atlantic Mechanical, Inc. v. Resolution Trust Corp.*, 772 F. Supp. 288, 291 (E.D. Va. 1991) (permitting a claim challenging

the Resolution Trust Corporation's repudiation of a contract pursuant to 12 U.S.C. § 1821(e)(1) but upholding the repudiation under an abuse of discretion standard), *aff'd by* 953 F.2d 637 (4th Cir. 1992). As Ravenswood did not assert that claim in its amended complaint, nor has it sought leave to amend its complaint again, we reach no conclusion on our jurisdiction to hear that claim.

Finally, it is worth pointing out that Ravenswood's due process argument is also undermined by the very case upon which it stakes its diminution in value theory. The party asserting a diminution in value theory in *Parkway* did so as an affirmative defense to an action by the lender to collect on a construction loan agreement. *Parkway II*, 1998 WL 18204, at *1. The court had specifically denied the party's right to assert a counterclaim for a set-off due to FIRREA's jurisdictional limitations in 12 U.S.C. § 1821(d)(13)(D), the same provision at issue here. *Parkway I*, 1997 WL 535164, at *9. Thus, even though it failed to do so during the administrative claims process, Ravenswood may yet have the opportunity to prove any diminution in value damages it may have sustained. As in *Parkway*, Ravenswood may be able to assert diminution in value stemming from the repudiation as an affirmative defense to any action to collect on the construction loan agreement. As this issue is not before us, however, we reach no conclusion on the merits of that defense or on its availability based on the facts of this case.

## IV. CONCLUSION

For the foregoing reasons, Ravenswood's motion is denied. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Date: March 21, 2011